Good morning, your honors. May it please the court, Christy Hughes from Federal Defenders on behalf of Mr. Valdez, and I'll attempt to reserve two minutes for rebuttal. The immigration judge violated Mr. Valdez's due process rights by failing to advise him that he was apparently eligible for voluntary departure. At the time of his deportation, no case held that reckless driving was an aggravated felony, and the plain language of the vehicle code did not meet the federal definition of an aggravated felony crime of violence. Because of this, Mr. Valdez was not precluded from voluntary departure, and the IJ should have advised him of his eligibility for this relief. Because there was no case law barring relief, and certainly no longstanding precedent barring relief, Mr. Valdez's case is unlike either Vandal Mendoza or Lopez Velazquez. In both of those cases, at the time of the deportation, relief was clearly precluded based on longstanding, clearly established precedent. Do Mr. Valdez have the opportunity to take an appeal from the judge's ruling, from the IJ's ruling? Well, he could have appealed, but because he wasn't advised of the right to voluntary departure, this court has held that's not a valid. But he could have appealed it, right? He could have appealed the IJ's ruling. He could have, but this court has said that when you're not advised of relief, there's no real opportunity to appeal, because what are you going to appeal? If you win, you're not going to have anything. You don't know that you have the right, excuse me, to some sort of relief. What should the IJ have ruled? In terms of had he applied for voluntary departure or? No, in terms of whether Mr. Hughes was eligible or not. So in terms of whether or not he was plausible, had he advised him of relief and had he applied? Right. Well, it was certainly within the IJ's discretion to grant Mr. Valdez voluntary departure. Right, but the IJ thought that he was not eligible because of his criminal record. Well, the IJ didn't go into that. We actually don't have any, the district court said that, but we don't have any transcript of what the IJ did. I guess what the IJ concluded is you have an aggravated felony, so you're precluded. But what the IJ did was not contrary to any law in existence at the time. Well, it was contrary to the ordinary and plain language of the vehicle code section, which didn't mean anything. So you're saying that what the IJ should have done is if there was any ambiguity in the law, you still tell somebody you have the option for voluntary departure. Correct. And if in fact the DUI, reckless driving, was not an aggravated felony, then you also have to tell them you may advantage yourself of voluntary departure, right? Correct. When there's no case law from the circuit precluding relief holding that this statute of conviction is an aggravated felony or another type of conviction that bars relief, then the IJ should have advised Mr. Valdez of his eligibility. And the IJ, and to Your Honor's question about his criminal history, the IJ found that he had an aggravated felony conviction and therefore didn't advise the voluntary departure relief. But that, that was contrary and that was a misapplication of existing precedent. And that's what this Court in Vidal-Mendoza said happened in Pajaro-Escalon, where there was no case law in point and the IJ failed to advise of relief. And this Court said, well, there the IJ misapplied existing precedent. Again, no case law in point. The existing precedent was the categorical approach and the modified categorical approach. This Court in Pajaro- But we effectively agreed with the IJ in a subsequent decision, which we later overturned, right? In Pajaros? In Fernandez-Ruiz. Oh, about the aggravated felony. Well, correct. But that, I mean, that doesn't change the fact that at the time of the deportation there was still no law in point. I think the only law, well, there was California law in point, although I realize there's slightly different definitions. But the California law, as I understood it, was this, that DUIs aren't aggravated felonies, right? Correct. And there was certainly no law in point comparing reckless driving or DUI to the federal definition in Section 16A or B. There was simply no, no law from the circuit whatsoever on whether or not that was an aggravated felony and therefore whether or not he was precluded or barred from relief. Counsel, Judge Gould, if I could ask you a question. Assuming that it's a due process violation for the IJ not to tell him he could apply for voluntary departure on the view that his convictions did not preclude that relief, still what's the best argument you have that he was prejudiced by that, which would mean that he could have gotten, actually gotten relief or likely gotten relief from the IJ? Because he had an awfully long criminal record. So I've wondered, you know, what are the odds the IJ would give him that relief? Well, he did have a criminal record at this point. At that point he had the two felony convictions and the three misdemeanor convictions. But he also had eight siblings that were all here with lawful status. Both of his parents were here with lawful status. That was his entire family. He lived here for 16 years since he was a child. He had graduated from high school in San Diego, and he had training and employment as a welder for four years prior to that deportation. And so his criminal history has to be weighed against those positive factors. And in similar situations, both this court and the BIA have upheld grants of voluntary departure where immigrants had very serious convictions, attempted rapes, gang ties in Gonzales-Figueroa, which we cite in the briefs. The immigrant had four assault convictions, a number of arrests, and was an admitted alcoholic which was contributing to his criminal history. So the standard is plausibility, is that right? Correct. And when we're trying to figure out what does plausibility mean, I suppose the case is way out here where they don't grant voluntary departure because it's, you know, certain murder-type cases, right? How do you turn into a plausibility calculus these series of cases which you have, in which there's a range of crimes, and then his situation? How do you think, how do we evaluate what is plausible? Well, we've argued that it means that it would not have been an abuse of discretion for the IJ to grant relief. That seems to be a wonderful standard. And so, for instance, the case Gonzales-Figueroa that I was just discussing, the IJ granted voluntary departure there. And DHS appealed and said, no, no, no, his convictions outweigh his positive equities. And the BIA said, no, voluntary departure was warranted as an exercise of discretion. And I'm sorry, that case was which one? That's Gonzales-Figueroa. That's Gonzales, mm-hmm. Similarly, in Sanabria-Dominguez, the IJ denied relief. And then up on appeal, the BIA reversed and said, yes, the fact that he had illegal entries with the aid of drug smugglers, he hadn't filed tax returns, he had, I believe, a DUI, that didn't outweigh his positive factors of having family members here and working in the community. And so I think this Court has to look at comparable cases. And, again, there's never going to be a case that's directly on point with the same convictions and the same positive equities. So we just have to look and see, well, in a similar case, would it have been an abuse of the IJ's discretion to grant voluntary departure? But it seems on the sort of what I'll call the family and the U.S. ties factors, he's, like, way off the charts on the positive, right? There's not much argument on that. Correct. So it boils down to whether in light of all of that evidence, how do you weigh in the convictions? Correct. And this Court said in Alcazar-Bustos, again, that we have to perform that analysis through the lens of the relief that's being sought. And so this was voluntary departure. This doesn't allow him any right to stay in the country. Correct. So when it's that low level of relief, we have to keep that in mind when we're applying the analysis. Do you want to save the remaining time? Yes, Your Honor. Thank you. May it please the Court, Daniel Zip on behalf of the United States. Your Honors, I'll address the due process claim first. The fundamental question for this Court is, what would have been apparent to the immigration judge in 1999 at this deportation hearing? Would it have been apparent to the judge that this defendant, or alien at the time, was an aggravated felon and was therefore not eligible for voluntary departure? The answer to that question can be found several years later when this Court addressed the very same issue that was before the immigration judge. I'm not too convinced by that because, you know, that's like foresight as opposed to hindsight. And the question is, at the time, it was equally plausible, if not more plausible, that it wasn't an aggravated felony, right? Do you have any Ninth Circuit cases, BIA cases, California cases, that would tell you the answer or which way the wind was blowing in 1998? No, not that I'm aware of. So why at that point, why is it a slam dunk simply because later a court ruled that way? It's not a slam dunk. The question is whether it would have been apparent from the textual analysis of the statute in front of the IJ. Are you familiar with the California case on Williams, where the California Supreme Court said that a DUI, even though it's a terrible crime, is not an aggravated felony or a crime of violence? I'm not familiar with that offhand. I don't believe that that case wouldn't have addressed the specific statutory question here. No, of course not. But it would have addressed it because there had been no case on the specific statutory question. But that case certainly would have informed how one might think about this state crime and how it might then fit in because of intent or other things to the federal structure, wouldn't it? Perhaps. But I would argue that the question at that point in 1999 is, was it apparent based on the statutory language in the DUI statute? No, that's contrary, Counsel, to Ms. Hughes' contention that what we ought to be looking for is whether it would have been an abusive discretion for the IJ to have granted voluntary departure at the time. Do you have authority for the standard that you're proposing? I believe the abusive discretion argument on their point went to the prejudice argument, didn't it? The question of whether he would have granted voluntary departure. That's probably right. Let me understand it if I can, too, that in the district court, the government took the position that there was a due process or did not contest that there was a due process violation. Is that right? That's correct, Your Honor. So I'm a little bit perplexed that you go through the district court, you say there is a due process violation, but then, of course, the government argues no plausibility and you win on that. Correct. And now you come on appeal and you do a 180 on your position on due process violation. Why haven't you waived that? Well, Your Honor, two reasons. First, during the pendency of this appeal, this Court issued the Vidal-Mendoza case, which was directly on point with the facts of this case. Vidal-Mendoza, the only difference being that in that case, there was a binding Ninth Circuit case at the time of the IJ. That's kind of a big difference, isn't it? I mean, in other words, what you're trying to ask us to do is, look, this is a position I took in the district court. We then had an after case, which had nothing to do with 1998, 1999, and on which there was a binding Ninth Circuit opinion, and now the government wants to flip its position on appeal. I just don't know what the authority would be for that, So maybe you can enlighten me a little more, because I do want to understand what would be the basis for us even entertaining your absolute change of position. Well, it would be the change in law brought about by the Vidal-Mendoza, but more fundamentally Let me just, we'll go one by one so I can understand. So if on the Vidal-Mendoza case, if that really isn't an intervening change of law, and I don't know one way or the other, but let's just say it doesn't qualify because of the nature of the case. Okay. Then what would be the other or other basis for you? Then the second basis would be simply that this is entirely a matter of law, that it's reviewed de novo from the district court. There's nothing that would have been in the record before the district court that's not before the court now. And those cases, my question on those cases, and I think we're all familiar with those, where a party makes a new argument. I don't really see this as a new argument. This is, do you see some distinction between making a new argument about something and actually changing your position? I don't see a distinction there. When it's a case like this that's an entirely de novo review, entirely legal issue that the court can and should consider the issue of due process on appeal. If Your Honors are not inclined to, I can move on to the prejudice argument. I don't know if we are now. I'm just trying to understand how we're trying to understand what construct to put the government's position in. And so what, you know, that's, what it means is that every case is sort of new jump ball in the court of appeals under your position because as long as there's a legal issue, you can actually even change your position. Yes. Even if there's not intervening law, your position is, it doesn't really matter what position you took in the district court. Once you get here, you can just flip positions and then argue it's a legal issue. So that would, we would have to embrace that, correct? If you find that the Vidal-Mendoza case did not change the law. Okay, I'm just trying to understand. Thank you. Continuing on the due process, the, what Vidal-Mendoza made clear is that once the immigration judge, well, I should say that the consequences for an immigration judge's failure to advise an alien of potential for voluntary departure are pretty extreme in the 1320-60 context as it's evolved in this circuit. Once that, I.J. makes that mistake, the immigration, or the alien is excused from filing any sort of administrative appeal. He's excused from seeking any sort of judicial review and is, goes halfway towards the due process and prejudice prong of the 1320-60 argument. Our position is that in a case like this where it's not apparent that the immigration judge made a mistake, it's either at the very least an open question as to what the interpretation of the statutory language is. But in a case like that, that it's not appropriate for the defendant to essentially be excused from appealing and is excused from seeking judicial review. Moreover, in this case, given the change in the case law in the Ninth Circuit in the years following the defendant's removal. Was, was the, was Mr. Valdez counseled at the time that he, that the I.J. made that ruling in 1999? We don't have a tape from the immigration proceedings. I don't know if he was counseled. I would imagine probably not based on how these things normally work. And given the change in the Ninth Circuit's case law, this would, if this defendant, when he came back illegally in 2001 and then came back again in 2003, there's no question that at those times had he been prosecuted for 1320-60, that there would not have been a due process violation. And I think what Vidal-Mendoza makes clear is that the immigration judge is not to be held responsible for future changes in the law and is not expected to be clairvoyant. Here, where you have a statutory interpretation that is, this court several years later found did not constitute an aggravated felony. And at the very least, as an open question as to how the statutory interpretation should go, there should be some responsibility for the alien at that point to Let me ask you, if it seems unclear, my understanding is that in that case, the I.J. needs to do the advice. I mean, obviously, if it's absolutely clear, you don't need the advice because the alien doesn't have any out, so to speak. But if it's not clear, I thought that the I.J. then was obligated to give the advice. But maybe I'm wrong. Could you, do you have, is that the case? I'm not aware of a case that says that specifically, that if it's an open question that the I.J. has a responsibility to advise of any possibility of interpreting the statute, particularly in a case like this, where when the Ninth Circuit interpreted the statute, they found unequivocally that it was categorically a crime of violence. When the time remaining on the prejudice argument, this is ultimately going to be a very factual-based analysis. Both parties have cited BIA unpublished opinions on both sides. It all comes down to, essentially, how this defendant's criminal history weighs against his positive equities. Do you, we had asked before about the standards for how we try to benchmark that. And Counsel for Mr. Valdez said, you'd have to see would it not be abuse of discretion if they granted, or the I.J. granted voluntary departure. Do you agree that is the standard? I don't, Your Honor. What do you think the standard is? That abuse of discretion, it doesn't appear, as I've seen it in any opinions or any case law, as to what the actual standard is. It's, as I understand it, just really a factual balancing of positive equities versus negative equities. And here, given the serious, recent, and violent series of convictions in 1992, 1994, 1996, and 1997, ultimately leading to this two-year prison term, while the defendant was on bond in other immigration proceedings, it's simply not plausible in light of that recent violent criminal history that this defendant's other positive equities would have outweighed and that he would have applied for voluntary departure and that it's plausible that the immigration judge would have granted it. And doesn't the lawyer ask us to just look at the total circumstances and say whether we think there was a plausible claim for this relief? Is it plausible that the I.J. would have given him discretionary relief? Yes, Your Honor. I think that ultimately it's a balancing of positive versus negative equities to determine whether it would be plausible. And in this case, the recency and the seriousness of his felony convictions immediately prior to his removal hearing would have made it implausible that the immigration judge would have exercised his discretion. Thank you. Thank you. Three points, Your Honors. First, Judge Bybee, your question about whether or not he was counseled, it doesn't appear in the record that he was. In fact, at ER 248, his mother actually files a letter on his behalf saying he's in custody and he can't come to this hearing. So I think if he had a lawyer, his mother probably wouldn't be filing those letters. Second, Judge McEwen, to your point about whether or not this has been waived, Lopez Velasquez was the en banc decision that talked about relief at the time of deportation and how we should look at the time of deportation. And Vidal-Mendoza specifically says that it's guided by the analysis of the en banc court in that case. So this wasn't a new intervening change in the law. The government could have argued that under Lopez Velasquez, we needed to look at the law at the time of the deportation. And they didn't argue that in the district court. And my third point is about the due process violation. The government's arguing that in order for it to be apparent that Mr. Valdez is eligible for relief, there has to be a case on point holding that this conviction is not an aggravated felony. And that definition of apparent, apparently eligibility, apparently eligible for relief just can't be squared with Pallares Galan and with the Vidal-Mendoza's court characterization of Pallares Galan. And Pallares, again, there was no case on point. And the Pallares Galan court went through California Supreme Court decisions, the ordinary meeting of the terms in the statute, the categorical approach, and the modified categorical approach. So what's your response to the government's argument that when he returned in 2001 and 2003, that under our decision in Saron, that he would not have been entitled to voluntary departure? In terms of before the I.J., whether or not he would have been entitled? Right. At that point, there would have been law, and an I.J. would have been bound by that. So the I.J. would have had to have come to the same conclusion the I.J. came in this case in 2001 and 2003. By 2006, the situation is going to flip, and the I.J. would have had to have given contrary advice. But at least as of the next two times that he illegally reenters the United States, the I.J. would have had to have given the same decision that the I.J. gave in this case in 1999. Well, respectfully, Your Honor, the 2001 and 2003 dates just aren't relevant. We're looking at here, at the time of his collateral attack, whether or not his 1999 deportation violated his due process. But it does go to the question, it does go to the questions the government argues as to whether the judge has to anticipate where the Ninth Circuit is going to go with this. And as you can tell, it's been a pretty serpentine path that we have taken. Very difficult to say, well, he was right, he was wrong, he was right, he was wrong, because we keep changing our minds. Well, and the government's argument would like the I.J. to anticipate that the Ninth Circuit and other courts were going to wrongly conclude that this was an aggravated felony and later on correctly conclude. That does really require clairvoyance. But if you stick with the rule of at the time of the deportation there was no case barring relief, so therefore he should have been advised of his eligibility, then there's no clairvoyance required. At that time, if the rule is the I.J. has to pretend to be ignorant and has to say, well, I have no opinion on the matter, I'm guessing that the Ninth Circuit will go one way and then change its mind later on, so I have to give involuntary departure because of that possibility. It's very different from saying, I've got an I.J. saying, I've got to decide this, I've got to go one way or the other, I've got nothing to guide me, and this is my best shot. That's correct. And so the I.J. should have applied the categorical approach and done that analysis. Right. If he had done that under Cerrone, if we came to that conclusion in Cerrone that applying those standards that he would not have been eligible for voluntary departure. Again, we change our mind, but as of 1999, the I.J.'s decision was not an unreasonable one given the very difficult history of this issue. Understood, Your Honor. But that, I think, goes to maybe the direct appeal context and not the collateral attack context. So here we're not saying that the I.J. was wrong and we get to go back and get a do-over and he gets voluntary departure in 1999. The argument is just that because the I.J. misapplied the existing law or did the categorical approach incorrectly, we now can't use that administrative proceeding as the basis for a criminal conviction. It goes back to the argument the government made, which I had not thought of before. I think it's an interesting argument, which is let's suppose that the I.J. in 1999 had said, I don't know how this is going to come out. Given the benefit of the doubt, you've got voluntary departure. He voluntarily departs, okay? He's law-abiding, so he voluntarily departs. And then he comes back in 2001. At that point, the I.J. says, I read Cerrone. You're not eligible for voluntary departure again. And at that point, you don't have an argument. If we're looking at the 2001. Right, 2001. But is there any place where he's not even granted voluntary departure once, he wouldn't have been eligible again in 2001. So how would we even look forward to what happened later? Because your only attack, as I understand it, is on the 1999 conviction. So then the question is, a question I asked Mr. Zipp, there is you took the position, well, if the law is unclear. It wasn't even unclear. It's not like there were cases on both sides. Right, there was just nothing barring relief. Right, there was nothing barring relief. What's your best case to say in that circumstance, then you should advise of voluntary departure? Piaris Galan. Okay. There was absolutely nothing barring relief. And this Court said the I.J. misapplied existing precedent and failed to advise the immigrant of his right to relief and, therefore, prejudiced him. Thank you. This case is exactly like Piaris. Thank you. Thank you both counsel for your argument this morning and the briefing in this case. United States v. Valdez is submitted.
judges: McKeown, Gould, Bybee